| | |
|---|---|
| DISTRICT COURT, BOULDER COUNTY, STATE OF COLORADO<br><br>Court Address: 1777 6th St.<br>Boulder, Colorado 80306 | DATE FILED: June 25, 2018 9:50 AM<br>FILING ID: 25F55DB199145<br>CASE NUMBER: 2018CV30610 |
| Plaintiffs: **MICHAEL SPITZER and DEBORAH SPITZER**<br><br>v.<br><br>Defendants: **CONTINENTAL CASUALTY COMPANY; AVIS BUDGET CAR RENTAL, LLC; IBM CREDIT LLC and SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.** | **▲COURT USE ONLY▲** |
| *Attorneys for Plaintiff*:<br>Marco F. Bendinelli (#28425)<br>Jared J. Mazzei (#50758)<br>BENDINELLI LAW FIRM, P.C.<br>9035 Wadsworth Pkwy., Suite 4000<br>Westminster, CO 80021<br>Phone Number: 303.940.9900<br>Fax Number:    303.940.9933<br>Email: MFB@COLawFirm.com; JJM@COLawFirm.com | Case No:<br><br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

NOW COMES, Plaintiffs, Michael Spitzer ("Michael") and Deborah Spitzer ("Deborah"), (Collectively referred to as the "Plaintiffs") by and through their attorneys, the Bendinelli Law Firm, P.C., for their Complaint against Defendants, Continental Casualty Company ("Continental"), Avis Budget Car Rental, LLC ("Avis"), IBM Credit, LLC ("IBM") and Sedgwick Claims Management Services, INC. ("Sedgwick"), states and alleges the following:

## INTRODUCTION

1.    At the time of the Incident, Plaintiffs resided at 2381 Kinlet Court, Marietta, GA 30062.

2.    Continental is a Foreign Corporation, registered to conduct business in the State of Colorado.

3.    Continental's registered agent in Colorado is Timothy Moehlenpah, 10375 Park Meadows Drive, Suite 300, Littleton, CO 80124.

4.      Continental's principle office street address is 333 S. Wabash Avenue, Chicago, IL 60604.

5.      Avis is a Foreign Corporation, registered to conduct business in the State of Colorado.

6.      Avis' registered agent in Colorado is Corporation Service Company, 1900 West Littleton Blvd., Littleton, CO 80120.

7.      Avis' principle office street address is 6 Sylvan Way, Parsippany, NJ 07054.

8.      Sedgwick is a Foreign Corporation, registered to conduct business in the State of Colorado.

9.      Sedgwick's registered agent in Colorado is The Corporation Company, 7700 East Arapahoe Road, Suite 220, Centennial, CO 80112-1268.

10.     Sedgwick's principle office street address is 1100 Ridgeway Loop Road, Memphis, TN 38120.

11.     IBM is a Foreign Corporation, registered to conduct business in the State of Colorado.

12.     IBM's registered agent in Colorado is The Corporation Company, 7700 East Arapahoe Road, Suite 220, Centennial, CO 80112-1268.

13.     IBM's principle office street address is 1 North Castle Drive, Armonk, NY 10504.

14.     Plaintiffs were injured on June 25, 2015, when Hector Salas-Gonzales (hereinafter "Tortfeasor") fell asleep while driving and collided with Plaintiffs' vehicle. (This event is hereinafter referred to as the "Incident").

15.     The Tortfeasor's negligent operation of his motor vehicle caused the Incident.

16.     The Incident directly and proximately caused Plaintiffs to suffer multiple serious injuries, damages and losses.

17.     As a direct and reasonably foreseeable result of the Tortfeasor's negligence, Plaintiffs have suffered and will suffer economic damages, non-economic damages, and damages for physical impairment and/or disfigurement.

## PERSONAL JURISDICTION

18.     Pursuant to C.R.S. § 13-1-124(1)(a), this Court has personal jurisdiction over Defendants because Defendants transact business in Colorado.

EXHIBIT A

19.    Pursuant to C.R.S. § 13-1-124(1)(d), this Court has personal jurisdiction over Defendants because Defendants contracted to insure Plaintiffs and their rental vehicle, both located within Colorado at the time of contracting.

## VENUE

20.    Pursuant to C.R.C.P. 98(c)(1), venue is proper in the District Court for the County of Boulder, because Defendants are nonresidents of the State of Colorado and Boulder County is the county designated in this Complaint.

## GENERAL ALLEGATIONS

21.    At the time of the Incident, the Tortfeasor carried $25,000 in Bodily Injury Insurance Coverage with Fred Loya.

22.    Plaintiffs were each offered the policy limits of $25,000 under the Tortfeaser's Bodily Injury policy, which was accepted by both Plaintiffs.

23.    At the time of the Incident, Plaintiffs' personal vehicles were insured by GEICO under policy 4251-80-21-30 ("GEICO Policy") which included $100,000/$300,000 in Underinsured Motorist ("UIM") benefits.

24.    Plaintiffs' were each offered the policy limits of $100,000 under the GEICO Policy, which was accepted by both Plaintiffs.

25.    As a result of the Incident, Michael has incurred medical expenses in excess of $221,189.39 and is legally entitled to collect over the $125,000 he received from the GEICO Policy and the Tortfeaser's Bodily Injury.

26.    As a result of the Incident, Michael has incurred medical expenses in excess of $221,244.43 and is legally entitled to collect over the $125,000 he received from the GEICO Policy and the Tortfeaser's Bodily Injury.

27.    At the time of the Incident, Plaintiffs were driving a 2015 Ford Focus (the "Rental") that they rented from Avis.

28.    According to the Traffic Accident Report, the Rental was insured by Continental under policy BUA7001700830 (the "Rental Policy").

29.    At the time of the Incident, Michael was an employee of IBM.

30.    Michael obtained the Rental through his employer IBM.

31.    Upon information and belief, IBM provided Plaintiffs with first party benefits in addition to those provided under a Worker's Compensation policy.

EXHIBIT A

32.     After the Incident, Plaintiffs contacted IBM to inquire as to what first party benefits are available to them.

33.     On August 25, 2015, Plaintiffs sent Avis a letter of representation placing Avis on notice of Plaintiffs' claim for UIM benefits.

34.     In that letter, Plaintiffs requested a certified copy of the Rental insurance policy.

35.     Defendants never responded to Plaintiffs' August 25, 2015 letter.

36.     On December 19, 2015, Plaintiffs received an email from IBM's corporate counsel directing Plaintiffs to a Sedgwick representative who would be handling the claim.

37.     IBM's corporate counsel further advised that Sedgwick will be able to answer Plaintiffs' concerns regarding available coverage.

38.     On January 6, 2016, Plaintiffs sent Avis another letter requesting a certified copy of the applicable automobile insurance policy that applies to the loss, including the declaration page.

39.     On February 18, 2016, Plaintiffs sent Sedgwick a letter once again requesting a copy of the applicable insurance policy.

40.     On February 19, 2016, Sedgwick sent Plaintiffs an email stating they were handling the claims processing for Avis.

41.     In that email, Sedgwick advised that there was no insurance policy for the Rental, but there was corporate coverage of 100/300/25.

42.     On June 3, 2016, Sedgwick sent Plaintiffs an email advised Avis is CO-primary for the loss and that UIM is exempt by statute.  The letter went on to clarify that Plaintiffs' insurance carrier will handle as primary until their limits were exhausted and then Avis would cover any excess damages.

43.     On that same date, Sedgwick sent a follow-up email advising they reviewed the claim and coverage and determined that there was no third party BI exposure since Michael was not at fault for the Incident. They then referred Plaintiffs to the Tortfeaser's insurance carrier, Fred Loya.

44.     On August 17, 2016, Plaintiffs sent Sedgwick an email requesting they comply with the Colorado Insurance Regulations by advising what coverage or benefits are available to the Plaintiffs.

EXHIBIT A

45.     On August 23, 2016, Sedgwick sent Plaintiffs an email which stated "our limits are New Mexico state limits of 25/50/10."

46.     On September 6, 2016, Plaintiffs sent an email to Sedgwick once again requesting a certified copy of the policy.

47.     On that same day, Sedgwick sent Plaintiffs an email advising they were a claims administrator - not an insurance company.

48.     Sedgwick further advised there was no policy or declarations page.

49.     On December 28, 2016, Plaintiffs sent Sedgwick an email demanding a copy of the plan and/or employee hand book with detailed benefits.

50.     On January 16, 2017, Plaintiffs sent an email following up on their December 28, 2016 email which went unanswered.

51.     On January 18, 2017, Sedgwick sent an email advising they were unable to send the rental agreement because it was a contract between the renter and the branch.

52.     Sedgwick further advised they have acknowledged their limits and are able to handle the claim up to those limits.

53.     On January 25, 2017, Plaintiffs sent an email requesting Sedgwick to please explain who the "renter" and "branch" are and whose limits were they acknowledging.

54.     On February 24, 2017, Plaintiffs sent Sedgwick their medical records and bills requesting what benefits were available.

55.     On March 1, 2017, Sedgwick responded by forwarding their June 3, 2016 email.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

56.     Plaintiffs hereby incorporate all of the foregoing paragraphs.

57.     An agreement existed between the parties by which Plaintiffs were entitled to first party benefits.

58.     Plaintiffs substantially performed their part of the agreement.

59.     The condition precedent for Plaintiffs to access their first party benefits under the contract was triggered when the Tortfeasor was underinsured relative to the damages caused to Plaintiffs by the Incident.

60.   Defendants failed to provide the contracted-for benefits associated with Plaintiffs' first party benefits, in breach of the contract between Plaintiffs and Defendants.

61.   Defendants failed to tender any first party benefits to Plaintiffs in breach of the contract between Plaintiffs and Defendants.

62.   As a direct and proximate result of Defendants' breach of the contract, Plaintiffs suffered, and will continue to suffer, general and special damages.

## SECOND CLAIM FOR RELIEF
### (Common Law Bad Faith Breach of Insurance Contract)

63.   Plaintiffs hereby incorporate all of the foregoing paragraphs.

64.   Defendants entered into an agreement with Plaintiffs by means of the Rental Policy and Michael's employment contract, to provide first party benefits.

65.   Defendants unreasonably refused to acknowledge full coverage of Plaintiffs under the agreements between Defendants and Plaintiffs.

66.   Defendants acted unreasonably by failing to acknowledge and act promptly in response to communications with respect to the claim that arose under the agreements between Plaintiffs and Defendants.

67.   Defendants acted unreasonably in refusing to pay claims within a reasonable time.

68.   Defendants acted unreasonably in not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims in which liability had become reasonably clear.

69.   Defendants' conduct was unreasonable because a reasonably careful insurer would not have taken the actions of Defendants.

70.   Defendants knew that its conduct was unreasonable, or the Defendants acted recklessly in taking their actions.

71.   Defendants recklessly disregarded the unreasonableness of their conduct referenced, because they acted with knowledge of facts that indicated that such conduct lacked a reasonable basis.

72.   Defendants recklessly disregarded the unreasonableness of their conduct referenced, because it acted with deliberate indifference to information concerning the claim.

73.   Defendants willfully engaged in said conduct.

74.   Defendants' conduct contributed to, and caused, their delay and denial of Plaintiffs' full benefits owed under the claim.

75.   As a direct and proximate cause of Defendants' violations of C.R.S. § 10-3-1104, Plaintiffs suffered, and will continue to suffer, general and special damages.

EXHIBIT A

76.  As a direct and reasonably foreseeable result of Defendants' bad faith breach of the agreements for first party benefits, Plaintiffs have suffered, and will continue to suffer general and special damages.

## THIRD CLAIM FOR RELIEF
### (C.R.S. § 10-3-1115 Unreasonable Delay & Denial)

77.  Plaintiffs hereby incorporates all the foregoing paragraphs.

78.  Defendants entered into an agreement with Plaintiffs by means of the Rental Policy and Michael's employment contract, to provide first party benefits.

79.  Plaintiffs made a claim for their first party benefits to be paid from Defendants.

80.  Defendants unreasonably delayed and denied full payment of those benefits.

81.  Defendants' delay and denial was without a reasonable basis.

82.  Defendants failed to investigate Plaintiffs' claim.

83.  Defendants unreasonably delayed and denied payment of Plaintiffs' first party benefits under the claim.

84.  Defendants' delay and denial was without a reasonable basis.

85.  As a direct and proximate result of Defendants' unreasonable delay and denial of the of Plaintiffs first party benefits, Plaintiffs have suffered, and will continue to suffer general and special damages.

## REQUEST FOR TRIAL BY JURY

86.  Plaintiffs hereby incorporate all of the foregoing paragraphs.

87.  PLAINTIFFS DEMAND TRIAL BY JURY on all of their claims set forth above.

WHEREFORE, Plaintiffs ask that judgment be entered in their favor and against Defendants for all available relief, including, but not limited to, economic damages, non-economic damages, and damages for physical impairment and/or disfigurement, as well as interest, costs, attorney's fees, and any other relief deemed proper.

EXHIBIT A

Dated this 25th day of June, 2018.

BENDINELLI LAW FIRM, P.C.

This pleading is filed electronically pursuant to C.R.C.P. 121 § 1-26. The original signed pleading is in counsel's file.

By:      */s/ Jared J. Mazzei*
         Marco F. Bendinelli (#28425)
         Jared J. Mazzei (#50758)
         *Attorneys for Plaintiff*

Plaintiffs' Address
2381 Kinlet Court
Marietta, GA 30062

EXHIBIT A