IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
CHIEF JUDGE MARCIA S. KRIEGER

Civil Action No. 18-cv-02055-MSK-NYW

MICHAEL SPITZER, and
DEBORAH SPITZER,

    Plaintiffs,

v.

IBM CREDIT, LLC,

    Defendant.
_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's ("IBM") Motion to Dismiss **(# 27)**. Also pending are two motions by IBM **(# 33, 49)** to dismiss the Sptizers' claims for lack of prosecution.

## FACTS

**A. Operative Facts**

The Spitzers' Complaint **(# 5)** appears to allege that Plaintiff Michael Spitzer was employed by IBM. In June 2015, apparently within the scope of his employment with IBM, Mr. Spitzer rented a vehicle from former Defendant Avis Budget Car Rental ("Avis"). Mr. Spitzer was driving that vehicle on June 25, 2015, when he was involved in an accident with a vehicle driven by Hector Salas-Gonzales. (The Complaint does not identify where.) It is somewhat unclear whether Plaintiff Deborah Spitzer was also in the vehicle at the time, but for purposes of this Opinion, the Court will assume she was. Both Spitzers suffered bodily injuries as a result of the accident.

1

The Sptizers then sought compensation for their injuries. They first made claims against Mr. Gonzales' insurer and recovered the full policy limits available under that policy. They then made claims on their own auto insurance policy's Underinsured Motorist provisions and recovered the full policy limits there, as well. They then turned to both IBM and Avis for additional coverage, and that is where the allegations in the Complaint become disjointed and difficult to follow.

The Spitzers allege that, "upon information and belief," IBM "provided [them] with first party benefits," ¶ 31, but also allege that they "contacted IBM to inquire what first party benefits were available to them." ¶ 32. They later received "an email from IBM's corporate counsel directing [them] to" a representative of former defendant Sedgwick Claim Management Services ("Sedgwick"), "who would be handling the[ir] claim." ¶ 36.

At the same time, the Spitzers were pursuing a claim against any insurance coverage available through Avis, and eventually, Avis indicated that Sedgwick would also be handling the Spitzers' claim against it. ¶ 40.

In the e-mail in which Sedgwick informed the Spitzers that it would be handling their claim against Avis, it also advised them "that there was no insurance policy for the Rental, but there was corporate coverage of 100/300/25." ¶ 41. Thereafter, Sedgwick sent the Spitzers an e-mail that advised that that "Avis is co-primary for the loss," that the Spitzers should work through their own insurer "until their limits were exhausted and then Avis would cover any excess damages." ¶ 42. The Complaint continues on at some additional length about difficulties that the Spitzers had in communicating with Sedgwick. The Court notes that IBM is never mentioned again in the factual recitation of the Complaint.

Based on these facts, the Spitzers assert three causes of action, all of which are pled generically against "the Defendants" – that is, IBM, Avis, Sedgwick, and Continental Casualty Company (the insurer of "the rental") – for: (i) breach of contract, in that "an agreement existed between the parties by which the Plaintiffs were entitled to first party benefits" and that the Defendants failed to provide such benefits; (ii) bad faith breach of insurance contract, in that the Defendants – presumably IBM – "entered into an agreement with [the Spitzers] by means of . . . Michael's employment contract to provide first party benefits," but failed to pay the Spitzers' claims for insurance benefits; and (iii) unreasonable delay and denial, in violation of C.R.S. § 10-3-1115, based on the same facts as the bad faith breach claim. All of the Defendants other than IBM have since been dismissed from this action.

**B. Procedural History**

IBM moved **(# 27)** to dismiss the Spitzers' claims under Fed. R. Civ. P. 12(b)(6), arguing that: (i) as to the breach of contract claim, the Spitzers have not alleged the existence of any contract of insurance between themselves and IBM and any failure of IBM to perform under such a contract; and (ii) as to the bad faith and statutory claims, such claims lie only as against insurers and the Spitzers have failed to allege facts showing that IBM was an insurer.

The Spitzers did not timely file a response to that motion. After a full month had passed with no response, IBM moved **(# 33)** to dismiss the Spitzers' claims for failure to prosecute. That motion spurred the Spitzers to file a response **(# 34)** to the original motion to dismiss a few days later (but not to the motion to dismiss for failure to prosecute). The Magistrate Judge *sua sponte* struck **(# 35)** the Spitzers' response as untimely. The Magistrate Judge invited the Spitzers to "fil[e] a formal motion requesting [ ] an extension [of the deadline for a filing a response to the motion to dismiss], which satisfies Rule 6(b)(1)(B)'s excusable neglect standard,

3

and only after engaging in a robust and meaningful conferral with opposing counsel." The Spitzers never filed such motion. They did, however, file an (untimely) consent form **(# 37)** (through counsel) and appeared at a Scheduling Conference **(# 43)**. But for a period of nearly three months, the Spitzers simply ignored IBM's pending 12(b)(6) motion and motion to dismiss for failure to prosecute. This delay prompted IBM to file a second motion to dismiss for failure to prosecute **(# 49)**.

Once again, that motion prodded the Spitzers to action. In response, they filed a Motion for Extension of Time **(# 51)**, seeking leave to file a response to IBM's Rule 12(b)(6) motion out-of-time. The Spitzers' counsel explained that: (i) "due to staff turnover," counsel did not "download" IBM's motion until a few days before the response's due date; (ii) counsel's staff then docketed an incorrect due date for the response to the motion; and (iii) counsel's office has experienced numerous personnel changes.

## ANALYSIS

### A. Failure to prosecute/extension of time

The Court denies the Spitzers' request for leave to file a response to IBM's Rule 12(b)(6) motion out of time. The Court need not consider the question of whether it is satisfied with the Spitzers' counsel's explanation for the circumstances that led to their initial response brief being filed late. Even if the Court were, counsel has offered no explanation whatsoever for his failure to respond to the Magistrate Judge's invitation for the Spitzers to promptly file a motion seeking leave to present that response out-of-time. Counsel does not indicate that he was unaware of the Magistrate Judge's order or that there were any obstacles that prevented him from making the instant motion for extension of time some three months ago. The Court can only conclude that the Spitzers' counsel has failed to demonstrate sufficient diligence and attention to this case and

thus, has failed to show excusable neglect justifying an extension of time under Fed. R. Civ. P. 6(B)(1)(b). The Court therefore declines to consider the contents of the Spitzers' tendered response to the Rule 12(b)(6) motion.

However, the Court denies IBM's motions that seek to dismiss the Spitzers' claims for failure to prosecute. The Spitzers' neglect of this case has been limited to filing responses (timely or otherwise) to IBM's motions. In all other respects, such as participating in the preparation of a Scheduling Order and attending a Scheduling Conference, the Spitzers have appropriately participated and prosecuted their claims. The appropriate remedy is not dismissal of their claims for failure to prosecute, but simply to deem the Spitzers to have waived any opportunity to be heard in response to IBM's pending motions, particularly the Rule 12(b)(6) motion.

The failure of a party to file a response to a motion by their opponent does not require that the motion be granted; rather, the Court must still evaluate the motion on its merits, albeit without the benefit of the responding party's arguments in opposition. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2002). Thus, the Court turns to the merits of IBM's Rule 12(b)(6) motion.

**B. Rule 12(b)(6) standard**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the

Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

**C. Breach of contract**

To state a claim for breach of contract against IBM under Colorado law (which the Court assumes the parties intend to apply in this action), the Spitzers must allege facts sufficient to show: (i) there was a binding contract between themselves and IBM; (ii) the Spitzers performed their obligations under that contract or that their obligations were excused; (iii) that IBM failed to perform its obligations; and (iv) the Spitzers suffered injury as a result of IBM's non-performance. *Western Distributing Co. v. Diodosio*, 841 P/2d 1053, 1058 (Colo. 1992).

The Complaint appears to identify only one contract between Mr. Spitzer and IBM: it references "an employment contract . . . to provide first party benefits." ¶ 63. The Court will

assume that this is sufficient to allege the first element of a breach of contract, albeit only for a breach of contract claim <u>by Mr. Spitzer</u>. The Spitzers have not identified any contract between IBM and Ms. Spitzer or otherwise pled facts that would suffice to show that Ms. Spitzer was an intended third-party beneficiary to any contract or otherwise had contractual rights she could assert in her own name. Accordingly, Ms. Spitzer's claim for breach of contract is dismissed.

IBM next contends that Mr. Spitzer has not alleged his own performance under the employment contract. The Complaint does allege such performance, albeit in entirely conclusory terms: "Plaintiffs substantially performed their part of the agreement." ¶ 58. IBM may be correct, as a technical matter, that such a conclusory assertion, bereft of any factual component, is insufficient to plead this element under the *Iqbal* standard. However, a plaintiff need not necessarily plead each element in full; rather, the Rule 12(b)(6) analysis is a contextual one that examines the sufficiency of pleading of the claim as a whole. *See Burnett v. Mortgage Electronic Registration Systems, Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013), *citing Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). In the context of this case, Mr. Spitzer's performance of his particular obligations under an employment contract (for which "first party benefits" would appear to be an aspect of his compensation or benefits) do not appear to be a significant or contested aspect of his claim for breach of contract. In such circumstances, the Court is prepared to overlook Mr. Spitzer's failure to plead the element of his own performance with anything more than a conclusory assertion.

However, Mr. Spitzer's claim fails to allege any facts showing that IBM failed to perform its own obligations under his employment contract. The Court's first task is to determine, based on Mr. Spitzer's allegations in the Complaint, exactly what IBM was required to do in order to perform its contractual obligations. The Complaint is exceedingly terse on this point, describing

IBM's obligations only as "providing [him] first party benefits." Mr. Spitzer does not explain what those benefits are nor the circumstances under which IBM was required to "provide" them (much less how they would be provided). It may be that Mr. Spitzer is alleging that IBM promised to take out a policy of insurance with an insurer that named Mr. Spitzer as an insured – in other words, that IBM would provide him a policy that would pay him "first party benefits" (in some unidentified circumstances). In that event, Mr. Spitzer is obligated to plead facts showing that IBM did not actually secure the promised policy, an allegation that Mr. Spitzer does not make here with any clarity. Alternatively, it may be that Mr. Spitzer is alleging that IBM was acting as an insurer itself, promising to pay him "first party benefits" in the event that Mr. Spitzer suffered a loss that fell within the terms of IBM's promised coverage. But again, Mr. Spitzer has not identified the scope of such alleged coverage, nor pled facts that show that any claim he made upon IBM fall within the scope of the promised coverage.

Ultimately, the fatal defect in Mr. Spitzer's breach of contract claim against IBM is the failure to identify any events involving IBM that occurred after IBM designated Sedgwick as the entity "handling the claim." It is clear that Mr. Spitzer had unfulfilling communications with Sedgwick thereafter, but it is not clear whether those communications were with Sedgwick in its capacity as a representative of IBM as compared than with Sedgwick in its capacity as a representative of Avis (or indeed, some other entity, *see e.g.* ¶ 45). Even assuming that Sedgwick was acting as IBM's agent in <u>some</u> circumstances, Mr. Sptizer also alleges that Sedgwick was also acting on Avis' behalf as well. The Complaint does not give any indication as to what actions by Sedgwick were allegedly done on IBM's behalf and which were done on Avis' behalf, and thus, the Court cannot assume that Sedwick's alleged obstinance is attributable to IBM. Accordingly, the Court finds that the Complaint fails to allege facts sufficient to plead

8

IBM's failure to perform under the terms of its "employment contract" with Mr. Spitzer, and that the breach of contract claim must be dismissed for failure to state a claim.

**C. Bad faith breach and delay**

Under Colorado law, claims for bad faith breach of an insurance policy and unreasonable delay in violation of C.R.S. § 10-3-1115 can only be brought against "insurers" – that is "a person engaged in the business of insurance." C.R.S. § 10-3-1115(2); *see e.g. Meyers v. Alliance for Affordable Services*, 371 Fed.Appx. 950, 956 (10th Cir. 2010) (common-law bad faith claim arises from "the special nature of the insurance contract and the relationship which exists between the insurer and insured"). As noted above, the Complaint fails to adequately allege facts that show that IBM was an "insurer" with regard to either of the Spitzers. They allege only that IBM promised to "provide first party benefits" to them as a function of Mr. Spitzer's employment. But absent a showing that IBM is routinely engaged in the (highly-regulated) business of insurance, the most appropriate interpretation of that allegation is that IBM was promising to procure an insurance policy for Mr. Spitzer, not to insure Mr. Spitzer by itself. Regardless, the Spitzers have not alleged any facts that demonstrate that IBM was an "insurer," and thus, their bad faith and statutory delay claims must be dismissed.

**D. Leave to replead**

The defects noted herein could, arguably, be cured by a sufficiently-pled Amended Complaint. But the Court exercises its discretion to not reflexively grant leave to the Spitzers to file an Amended Complaint at this time. As noted above, the Spitzers have been unusually dilatory in their pursuit of this case and the Court is not inclined to prolong this action in order to provide the Spitzers an opportunity to rescue it. Rather, the Court will grant IBM's motion to dismiss and dismiss the Complaint. If the Spitzers believe that they can adequately plead facts in

an Amended Complaint, they are free to promptly file an appropriate motion to reopen the case and seek leave to file an amended pleading.

## **CONCLUSION**

For the foregoing reasons, IBM's Motion to Dismiss **(# 27)** is **GRANTED**, and the claims in the Complaint **(# 1)** are **DISMISSED** without prejudice. There being no remaining Defendants, the Clerk of the Court shall close the case. IBM's motions to dismiss for failure to prosecute **(# 33, 49)** are **DENIED**, and the Spitzers' Motion for Extension of Time **(# 51)** is **DENIED**.

Dated this 4th day of February, 2019.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge